ORANGE,
*March*,
1842.

Fox
*v.*
Hatch.

TALITHA FOX *v.* ALVAH HATCH.

The lands of a married woman may be set off, during coverture, in satisfaction of an execution issued upon a judgment against her and her husband, founded on a contract executed by her previously to her marriage.

EJECTMENT to recover the seizin and possession of certain lands. Plea, not guilty, and trial by the court.

On the trial in the county court, the plaintiff showed that she was the legal owner of the premises in question, at the time of her marriage to one Conroy Fox, on the 8th day of November, 1830, and that the defendant was in possession thereof at the commencement of this suit; that, at the March term of the supreme court in Orange county, A. D. 1837, a bill of divorce was granted her by said court, dissolving the bonds of matrimony between her and the said Conroy for the intolerable severity and adultery of the said Conroy. The defendant showed the record of a judgment in favor of Calvin Ainsworth, recovered at the June term of the county court, 1831, against the said Conroy and Talitha and one Ebenezer Burnham, on a note given by said Burnham and said Talitha, before her marriage to the said Conroy, on which an execution issued and was levied on one of the pieces of the land described in the plaintiff's declaration and which land was set off in satisfaction of said execution on the 4th day of November, 1831.

The defendant also showed the record of a judgment in favor of Darius Pride, recovered at the same term of the county court, against the said Conroy, Talitha, and Ebenezer, on a note given by said Burnham and Talitha, before the said Talitha's intermarriage with said Conroy, on which an execution issued and was levied on the other piece of land described in the declaration, which last mentioned land was set off in satisfaction of said execution while the said Talitha was the wife of the said Conroy. The defendant also showed deeds of conveyance of said pieces of land from the said Calvin Ainsworth and Darius Pride to himself, and his only title to the same was what he derived by virtue of the aforesaid levies of the executions. The executions and officers' returns

thereon were in due form of law. The plaintiff contended that she was not devested of her title to the premises by virtue of said levies of said executions and was entitled to recover, but the court decided otherwise, and rendered judgment for the defendant. To which decision the plaintiff excepted.

*L. B. Vilas* and *E. Farr,* for plaintiff.

The defendant's title is *stricti juris,* and although a *feme covert* may be included in the general provisions of the statute, relating to extending executions on real estate, yet if there are rights and duties for the debtor, reserved and required by the same statute, which it would be impossible in law for her to protect and perfoim, it follows that she was not intended to be included.

That there are exceptions to these general provisions there can be no doubt; for instance, infants, lunatics, idiots, and persons *non-compotes;* and it is believed that it will not be contended that the land of such persons could be acquired by set-off on execution.

The legal existence of a woman is, in a degree, lost and suspended during her matrimonial union. She has no power to bind herself at common law, by contracts, and although our statute points out a mode in which she can convey her estate, yet she is not liable on the covenants in her deed, and, in fact, is as much incapable of legal action as an idiot or *non-compos.* 2 Kent's Com. 109 and 127. 1 Black. Com. 468 and 471. *Sawyer* v. *Little,* 4 Vt. R. 414. *Watson & Wife* v. *Watson,* 4 Camp. R. 90. *Sumner* v. *Conant,* 10 Vt. R. 9.

Judge Blackstone says, that the disabilities which the wife lies under are for the most part intended for her benefit and protection,—so great a favorite is the female sex of the law of England. It cannot then, we infer, be successfully contended *here* that they should operate to her injury.

What are those rights and duties reserved and required of the debtor in an execution, extended on real estate, which are inconsistent with the legal situation of a *feme covert?*

In the law for levying executions, Statute, Slade's Comp. 208, §1, the officer is required to repair to the debtor's

usual place of abode and demand of such debtor, the sum in debt, damages or cost, contained in such execution, &c. ; and, upon such debtor's refusal or neglect to pay such sum, the officer is directed to levy, &c.

It is impossible to demand pay of a *feme covert*, as she is not legally a person, and, if it could be demanded, she has not power to refuse or to pay.

In section third it is declared that the real estate of the debtor may be taken in execution, when the debtor shall not expose and tender personal estate ; but a *feme covert* can have no personal estate at law, nor has she any power to tender it if she could have.

In section ninth it is said that the estate shall be appraised by three judicious and disinterested free holders, one of whom may be chosen by the debtor, one by the creditor, and the other may be mutually chosen by the parties but a married woman has no power whatever to do this.

In section fifth it is provided that the debtor may redeem the estate set off, in six months ; but how can a *feme covert* do this unless she is discharged from coverture ? Again, by the statute of 1837, a defective extent becomes quieted in two years, and that time is given the debtor to petition the supreme court to set aside and annul any levy or extent, but a *feme covert* cannot do this, and the statute of limitations runs against her before she has power to act, provided she is included in its general terms.

It is no legal answer to this to say that a creditor cannot get satisfaction for his debts. If the legislature have not provided for such cases, or if the law which they have enacted cannot be extended to a case like the present, without manifestly violating plain and obvious principles, it is not for the court to supply the omission. *Hunt* v. *Lee et al.* 10 Vt. R. 303. The reasoning in the last case cited applies with equal force to the case at bar.

Every person who trusts or gives credit to a *feme sole,* does it with the knowledge that she may, at any time, be married and her marriage generally operates for the benefit of creditors, as the husband becomes liable for her debts. He also, by the marriage, acquires all her personal property, and the use of her real estate, which, at once, becomes liable for his debts. There are occasionally hard cases arising

from the operation of the law ; but the law cannot bend. A husband may acquire any given sum in personal estate by his wife, for which she may be indebted, yet, if the creditor does not collect his debt, during coverture, of the husband, he is forever discharged, and the creditor must lose his debt, although the husband may have acquired ten times the amount of the debt by his wife. Reeve's Domestic Relations, 71.

In this case all the title which was derived to the land was what Conroy Fox had, and his title became extinguished by the plaintiff's being divorced from him, so it leaves the title of the plaintiff precisely where it was when she intermarried with Conroy Fox. *Mattocks* v. *Stearns et al.*, 9 Vt. R. 326.

*L. B. Peck*, for defendant.

The statute provides, ' that all houses, lands and tene-' ments belonging to *any* person, in his or *her* own right in ' fee, or for his own life, or for the life of another, paying no ' rents for the same, shall stand charged with all the just ' debts and demands owing by such person, as well as his ' personal estate ; and shall be liable to be taken in execution ' for the same, at the election of the creditor,' &c. Comp. Stat. 210, §3. This is certainly broad enough to embrace the case at bar. If the plaintiff had been a *feme sole*, at the time of the levy, it is not pretended but that the creditor would have acquired a title to the land by the levy. But the argument is, that, by her intermarriage with Fox, the creditor's right to take her real estate is destroyed, as the statute makes no provision for the appointment of appraisers in such case. This position is one of a novel character, and if it can be sustained, it follows that an execution against a lunatic, or an infant, cannot be extended on their real estate, as they are not competent to choose appraisers. But it is believed that the plaintiff might have selected an appraiser ; that this power is not only confered by statute, but exists at common law. The statute of 1797, (Comp. Stat. 210, §4,) provides ' that one of the appraisers may chosen by the ' debtor or debtors, one by the creditor or creditors, their ' agents, or attorneys, and the other may be mutually chosen ' by the parties,' &c. The plaintiff, in this case, was, to all intents, the *debtor*. She was a necessary party to the suit, and

had she not been made a party, the creditors would have been cast in the action. She must be regarded a *debtor*, within the meaning of the statute, and might have acted in the selection of appraisers. This statute is supposed to have been copied from the provisions of the Connecticut statute, as it will be found, on examination, there is no material variation between the two. In that state, it has been held that the appointment of an appraiser by a *feme covert* is valid. 2 Root, 15. 1 Swift's Dig., 155. 1 Backus' Sheriff, 221. Whether the court there proceeded on the ground that this power was conferred by the statute, or existed without it, is immaterial, as the decision is applicable to this case in either point of view. In *Babb et ux.* v. *Perley*, 1 Greenleaf, 6, Mellen, Ch. J., holds this language ; ' the law is consistent ' and just. It subjects the *land* to the payment of the wife's ' debts, and the profits to the payment of the debts of the ' husband.' To give effect to the argument of the plaintiff is saying that the wife's *land,* by her marriage, is placed beyond the reach of her creditors.

Marriage sometimes produces strange results ; but this would be the strangest of all, and is at variance with the opinion of Ch. J. Mellen. By the common law, a *feme covert* may suffer a common recovery ; she may also execute a power, and devise her real and personal estate. Reeve's Dom. Rel., 120, 161, and the cases there cited. So it seems she may submit a question concerning her real estate to arbitration. *Weston* v. *Stuart*, 2 Fairfield's R. 326. And if she can do all this, why may she not appoint appraisers ?

So when husband and wife are in prison, upon an execution, and the wife is suffered to escape, the sheriff is answerable for the whole debt, although the husband remain in prison. 1 Rolle's Abr., 810. So, too, it has been held that if the *feme* be arrested on an execution against herself and *baron*, and she is discharged from custody by the consent of the creditor, this is a bar to an action founded on the judgment. *Eastman* v. *Thrasher & wife*, cited by Richardson, Ch. J. in *Kimball & wife* v. *Molony*. These decisions proceeded on the ground that the wife was the *debtor*. In *Briscoe* v. *Kennedy & wife*, 2 Wil. 127, the wife, *dum sola*, gave her bond and married A., both outlawed, and her separate goods were taken in execution. Outlawry, as to

her, set aside, but not the execution. It was deemed proper that her separate goods should be taken to pay her debt contracted *dum sola.*

2. If, however, the plaintiff had no power to act in the appointment of appraisers, her husband was authorized to act for her, and she would have been bound by his acts, and if he neglected to act, the effect is the same. The husband must be regarded as the agent of his wife for this purpose. Neither can a minor, nor one *non compos*, choose appraisers, but their guardian may. *Bond* v. *Bond*, 2 Pick. 382. To hold that the land of a *feme covert* cannot be taken on execution for the payment of her debts, will be not only disastrous to the creditor, but of serious detriment to that class of debtors. It will force the creditor to commit them on final process in all cases not forbidden by our statute, and the wife must either lie in jail, or force the sale of her lands, if the amount cannot be otherwise raised. That the creditor has the right to commit the *feme*, as well as the *baron*, on an execution against both, does not admit of controversy. *Haines* v. *Corliss*, 4 Mass. R. 659. *State* v. *Philipsburgh*, 10 Mass. R. 78. *McKinstry* v. *Davis et ux.*, 3 Cowen, 339. *Kimball & wife* v. *Molony*, 3 N. H. R. 376. *State* v. *Bedlam*, 9 Pick. 362. Clancy's Rights of Women, 86, 89, 90. *Sparks et al.* v. *Bell & wife*, 8 Barn. & Cres. 1. *Chalk* v. *Deacon*, 6 J. B. Moore, 128. In *Sparks* v. *Bell*, Bayley, J. states this to be the rule, that, in an action against husband and wife, they may both be taken in execution; and when the wife is taken in execution she shall not be discharged, unless it appear that she has no separate property out of which the demand can be satisfied, or that there is fraud and collusion between the plaintiff and her husband to keep her in prison.

3. The plaintiff was seized in fee of the land levied upon, and her husband of a life estate. Under these circumstances, both being debtors, the appointment of appraisers by the husband would have satisfied the statute, and his neglect to appoint authorized the justice to act. *Herring* v. *Polly*, 8 Mass. R. 113.

The opinion of the court was delivered by

ROYCE, J.—The question to be determined is whether the

real estate of a *feme covert* can legally be extended and set off on execution, in satisfaction of her debts contracted before marriage. It is contended that her legal disabilities are such, that the statute, authorizing the levy of executions upon land, cannot consistently or justly be carried into effect against her. It is urged that she is necessarily deprived of all means of paying the execution, and thereby preventing a levy upon her land ; that she has not authority to agree upon or choose appraisers ; that she cannot redeem her land from the levy, nor procure it set aside, if defective.

That these are serious and important considerations must be admitted ; and it is true that reasons of a character somewhat similar induced this court to decide, in *Hunt* v. *Lee and others,* 10 Vt. R. 208, that a person who was *non compos mentis* was not liable to be assessed by the listers for money on hand or debts due. We do not, however, consider the reasons of that decision so conclusively applicable to this case as to justify us in pronouncing the levy void. The question there involved related only to a single class of assessments under the listing law, which can never be numerous nor of large amount. Past transactions could be affected only to a very limited extent, and existing rights to property could scarcely be at all disturbed, by the decision then made. In these respects, the case now before the court evidently requires a different consideration. The law for setting off land upon execution has existed, with little or no change, from the organization of our state government. It has never contained any exceptions, or special provisions, to meet a case of legal disability in the debtor. It is, therefore, impossible to foresee the consequences of such a determination as the plaintiff asks. We have reason, at least, to suspect that they might be extensive and disastrous. In its operation upon the rights of a married woman, this law merely appropriates her land, at a sworn appraisal, to the payment of her own debts ; debts for which she remains holden, notwithstanding her marriage, and, till quite recently, was subject here, as every where else, to be imprisoned. And if by statute her person is now exempted, justice cannot the less require that her property should be made liable.

Every constitutional statute is to be expounded and enforced according to the intention of the legislature. And that

intention can only be collected from the terms employed to express it. It is true that an intention, apparently expressed in a general provision, may be qualified and restricted, or even disproved entirely, by another intention specially expressed in the same statute. It is laid down as a rule, that where a general intention is expressed in a statute, and the same act also expresses a particular intention incompatible with the general one, the particular intention is to be considered in the nature of an exception. Dwarris on statutes, 86. The decision in *Hunt* v. *Lee and others* tends to illustrate these rules of construction. It was there considered that the general enactment, authorizing such assessments, was not intended to apply to a case where the party assessed could not, by reason of incapacity, become availed of the benefits secured by certain special provisions in the same statute.

But the means appointed for the legal proof and establishment of a debt are obviously of more intrinsic importance than those which only concern the mode of applying property in payment of it, when duly established. In this view the present case is plainly distinguishable from that just cited. There the just liability of the party to be assessed could not be ascertained in the mode which the statute had prescribed; whilst, in this instance, the debt was established against the plaintiff by a regular suit and judgment, in which her husband was joined as a co-defendant. And a suit thus instituted and conducted affords to the wife all the protection which common law or statute has ever provided. In the case cited the danger was that there might, in truth, be no just ground of liability; but this case merely furnishes an occasion to surmise that the land may have gone at an under value. Without deciding what influence this latter consideration should have in the case of a different disability, or even in the case of coverture under other circumstances, we can attach to it no great importance in this instance. The plaintiff's husband, having an estate in the land so long as the marriage relation should continue, was directly interested with her in procuring a judicious and just appraisal. They were both debtors in the execution, and both notified before the levy, in the manner directed by the statute. We must, therefore, infer that her interests had the like protection upon that occasion as in the progress of the previous suit. Upon

ORANGE,
*March*,
1842.

the whole, as this proceeding has conformed to the language of the statute, we think it must be considered as also within its spirit and meaning.

Judgment affirmed.