THOMAS P. SHAPARD VS. A. BAILLEUL — Appeal from Washington County.

If an execution be not sued out within a year from the rendition of the judgment, the lien created by the judgment ceases to operate; and the plaintiff will be required to resort to a *scire facias*, or an action on his judgment.

When an appeal is taken and security given, all proceedings on the judgment are suspended; and so long as that impediment exists, it affords a sufficient excuse for not suing out an execution; but when it ceases, the diligence which the law exacts of the plaintiff requires him to use all the means placed in his hands to enforce the collection of his judgment.

If the defendant in the judgment takes an appeal, and does not prosecute it at the next succeeding term of the supreme court, the supersedeas to the judgment is at an end, and the plaintiff may sue out his execution; and if he neglect to do so for more than one year, he does not use the diligence required to keep up the lien of his judgment.

The object of the law in requiring diligence on the part of the plaintiff to enforce the lien of his judgment, is to protect intervening rights, and also to prevent collusive liens.

Case stated in the opinion.

WEBB for appellant.

J. WILLIE for appellee.

Mr. Justice LIPSCOMB delivered the opinion of the court.

This action was brought to recover a certain lot in the town of Washington. The plaintiff claims title by virtue of a purchase, at sheriff's sale, of the property sued for. The defendant claims by purchase from one of the defendants in execution prior to its issuance. There was a verdict and judgment for the defendant, from which the plaintiff appealed.

It appears, from the record, that on the 17th day of March,

1840, in the district court of Washington county, Hood, Shapard & Co. obtained a judgment against D. B. Friar & Co., from which an appeal was prayed and allowed; and a paper, purporting to be an appeal bond, was filed on the 20th March, 1840, in the office of the clerk of the court. It is, however, alleged to be so defective as not to be binding on any one. This bond was executed by Bailey, one of the firm of D. B. Friar & Co., and another person as his security. The appeal appears not to have been prosecuted, as, on the 19th of June, 1843, the clerk of the supreme court certified that no such suit had been filed in his office up to that date; and on the 30th of June, the same year, the first execution was issued on the judgment obtained in 1840. This execution was levied on the lot in controversy, and, after several other executions, the lot was sold.

The most important inquiry is as to the validity of the first execution after such a lapse of time; and, in the prosecution of this inquiry, it will be necessary to examine our laws regulating executions.

The 12th section of an act concerning executions, passed on the 5th February, 1840, provides "that whenever final judgment shall be rendered by the supreme, district or county courts of this republic, it shall operate as a lien on all the property of the defendant, situated and being in the same county where judgment is rendered, from the day of the date of the judgment: provided, that said lien shall cease to operate, if execution be not issued out within twelve months from the date thereof, and due diligence be not used to collect the same " [Acts 4th Cong. p. 95.]

The first part of the 2d section of the act of limitation, passed the 5th February, 1841, provides "that judgment in any court of record within this republic, where execution hath not issued within twelve months after the rendition of the judgment, may be revived by *scire facias*, or action of debt brought thereon, within ten years next after the date of such judgment, and not after." [Acts 5th Cong. p. 164.]

The above are believed to be the statutory regulations in re-

lation to executions; and it is manifest that, according to the section first cited, the execution not having been sued out within the year from the rendition of the judgment, the lien ceased to operate. And it will be seen by the last section cited from the law of limitation, that if the execution had not been issued within twelve months, on the judgment, that the plaintiff would be required to resort to a *scire facias*, or an action on his judgment. The conclusion is, therefore, that the execution, under which the sale was made to the plaintiff, was void, because it had not been sued out within a year from the rendition of the judgment, unless the fact of an appeal should produce a different result.

The act we have cited seems to be imperative, and without any conditions or qualifications, that the lien shall cease to operate if the execution is not sued out within twelve months from the date of the judgment; and, if literally taken, would not admit of any excuse — not even if the party was restrained by an injunction from issuing out his execution. It cannot be denied that the law-making power could, if disposed to exercise such power, require that a judgment should lose its lien if the plaintiff failed voluntarily or involuntarily to sue out his execution within the twelve months; but we cannot believe that such was the design of the legislature in the passage of the acts cited. If bond and security was given by the defendant in the judgment in double the amount of the judgment, an appeal was a matter of right [see 15th section of the act establishing the district court, and defining its powers and jurisdiction. Laws of the State, vol. 1, p. 203]; the appeal, when so taken, and the security given, superseded all proceedings on the judgment in the court *a quo* the appeal was taken. It is said that the bond for the appeal was not in the terms of the law; that it was a nullity, and ought to have been so treated by the plaintiffs in the execution. As it has been presented to us, it is certainly informal and very defective. The most prominent defect is in the description of the judgment, from which the appeal has been taken. This is, however, in the conditional part, and per-

haps was a good bond, notwithstanding the defects, and a substantial compliance with the law. At all events, we are not now adjudicating its validity; and the only possible bearing it can have on the case before us is, as showing the degree of diligence used by the plaintiffs to keep the lien operative. The clerk had received it, and it was so much a matter of course to give credit to the discretion of the clerk, that if no bond had actually been given, the not noticing that fact, at the time, could hardly have been visited on the plaintiffs as a want of diligence. We have in the case of Bennett & Wife vs. Gamble (decided at the first term of this court) given a construction to the words, "*due diligence to collect the same*," used in the concluding part of the 12th section just cited; we construed it to mean the use of all the means the law afforded to the party. Now, if the appeal interposed an impediment to the issuance of execution, it affords a sufficient reason so long as that impediment continued; but when it ceased, that diligence that the plaintiff is required to use would have informed him of the fact that his execution was no longer suspended; and, at the same time, called on him to use the means the law put into his hands.

We will inquire if such diligence was used in the case under consideration.

In the act to organize the supreme court, and define the powers and jurisdiction thereof, section 7 provides: "In all cases taken to the supreme court, in case the copy of the record in the cause below shall not be filed with the clerk of the supreme court on or before the first day of the term to which such case was taken or returnable, it shall be lawful for the court, on motion of the defendant in appeal, and on producing a copy of the citation duly served on the defendant, to dismiss the cause; but the same may be reinstated, at any time during the term, if good cause be shown, to the satisfaction of the court, why a copy of the record was not filed in due time." [Laws of the Republic, vol. 1, p. 80.]

At the return term of the supreme court, the plaintiffs in

execution could have had the appeal dismissed for a failure on the part of the appellants to file the record; or, after the end of the term, the appeal not being taken up, the supersedeas would have been at an end. The term of the supreme court next after the appeal commenced in January, 1841, and ended in February. From this time the legal impediment was removed, and the plaintiff might have sued out his execution; but, instead of doing so, he remains inactive for more than three years from the rendition of his judgment, and more than two from the time when the supersedeas ceased to operate; and then he sues out his execution. I put no stress whatever on the certificate of the clerk of the supreme court, which, it seems, was obtained a few days before the issuance of the first execution. I know no law that required the plaintiff in the execution, to wait for that description of evidence — that the appeal had not been prosecuted. If it had been necessary, it should have been on the adjournment of the court; this afforded full and complete evidence that the appeal had been abandoned. The due diligence exacted by the law would fix the limitation to within the year from the time the supersedeas was discharged. More than two years elapsed before the issuance of the execution. This is not sufficient to keep up the lien of the judgment. There is a great error in supposing that the delay is only a question between the plaintiffs and the defendants in the execution; other rights have intervened; and it is for the protection of such rights that the legislature imposed on the plaintiff in a judgment the use of diligence, if he wishes to continue his lien. It was intended, likewise, to prevent collusive liens. If we were to rule differently, and to hold that an appeal taken and not prosecuted, at the will of the appellee (the plaintiff in the judgment), kept alive the judgment lien, we would not be able to fix any limit whatever. If allowed to retain his lien more than twelve months from the time when the suspension was removed, without suing out his execution and using diligence to collect the judgment, he might postpone it two, three, or an indefinite number of years.

The appellant's counsel is in an error when he supposes that the appellee showed no title. It appears from the record that both parties claimed under Bailey, and that the appellee read his deed to the jury. It is not, however, important that he should have shown title in himself. If the execution was void, as it is believed to have been, it could give no title to the purchaser under it.

There is another point made in the appellant's brief that it may be well to notice: it is, that the judge erred in submitting the validity of the execution under which the appellant claimed to the judgment of the jury; thereby declining to respond to a question of law, and leaving it to be decided by the jury. The record, it is believed, does not support the assignment, and that the counsel has been misled by taking the reasons assigned on a motion for a new trial for the statement of facts. The bill of exceptions does not show any such decision by the judge nor is it anywhere to be found but in the motion for a new trial. This motion was overruled because, perhaps, the judge had not given such charge.

Judgment affirmed.