W. P. LAUGHTER v. JONATHAN A. SEELA.

(Case No. 1468.)

1. PRESUMPTION — EXECUTION — DEED.— When the record discloses a sale, made under an execution sued out in 1867, on a judgment rendered in 1863, it will be presumed, in the absence of evidence to the contrary, that the execution legally issued, no failure to issue execution within the year being shown, or whether it was the first or an *alias* or *pluries* execution. The agreed statement of facts reciting that a sheriff's deed for the property sold under such execution was read in evidence, it will be presumed that the levy, sale under execution and sheriff's deed were all in due form. Even if the execution had not issued within one year from the date of the judgment, it is not clear that under the laws then in force the purchaser under a sale made by virtue of such an execution would not have been protected. Boggess v. Howard, 40 Tex., 158; Cook v. Brown, 45 Tex., 73; Taylor v. Snow, 47 Tex., 463, and Cook v. Sparks, 47 Tex., 28, cited.

2. SALE OF MINOR'S ESTATE UNDER JUDGMENT FOR COSTS IN PARTITION.— Under the probate act of 20th March, 1848, the share of each distributee, in the partition of an estate, was liable for costs in proportion to the share he received, which was a charge upon the interest received, and the payment of which might be enforced by execution. By an act concerning guardians and wards, passed by the same legislature on the same day, provision was made for the raising of means to pay debts against the minor's estate by a sale of his property under the direction of the probate court. *Held*, that a sheriff's sale, and deed executed in pursuance thereof, under a judgment in partition awarding execution for costs against a minor distributee, vested title in the purchaser of the minor's interest.

3. CONSTRUCTION OF STATUTES.— When two acts of the legislature are passed on the same day, the courts will not hold either repealed by the other, unless they present a strong case of repugnancy, inconceivable inconsistency or palpable absurdity. Even then the exercise of the power in the judicial department to declare which act should survive at the expense of the other, would be of doubtful propriety; and this court recognizes no established rule by which precedence could be given to either.

4. CONSTRUCTION OF LAWS.— In the absence of the express repeal of an act, or when the legislative purpose to repeal is not clearly manifest, it is no part of the duty of courts to resort to technical subtleties to defeat the obvious design of the law-making department in a matter within the scope of its constitutional power.

5. STATUTES CONSTRUED — INJUNCTION.— Under sections 24 and 25 of the guardian's act of 1848, the guardian could make application to the county judge for an order to sell property to pay costs adjudged against the minor's estate in partition proceedings. There can be no doubt of the power and duty of the district court

to interfere, if necessary, in extreme cases, by injunction, to prevent the sacrifice of the minor's estate, under judgment for costs in partition, until provision could be made to pay costs without sacrificing the estate.

6. CASES APPROVED.— Adriance, Guardian, v. Brooks, 13 Tex., 279; Tucker v. Brackett, 28 Tex., 339, and Moke v. Brackett, 28 Tex., 446, discussed and followed, and many other cases cited.

7. APPROVED.— The principle announced in Freeman on Judgments, sec. 22, quoted with approval, to the effect that it would be a contradiction in terms to say that all persons may be bound by judgments, and then declare that some persons are exempt from having executions issued against them.

8. CASES FOLLOWED.— Upshur v. Pace, 15 Tex., 532; De Leon v. Owen, 3 Tex., 153; Pool v. Wedemeyer, 56 Tex., 296, and Encking v. Simmons, 28 Wis., 272, cited and followed.

9. CONSTRUCTION OF STATUTES.— When there is nothing in the statute to limit its general words, they must have general effect.

APPEAL from Jackson. Tried below before the Hon. Wm. H. Burkhart.

The agreed statement of facts is too lengthy for insertion. The suit was brought by Jonathan Seela to recover land in trespass to try title. The defendant set up title under a sheriff's sale and deed. The plaintiff claimed as heir of Jonathan Vess, and his title was admitted to be good unless defendants acquired title under a judgment in a proceeding in partition, execution and sheriff's deed. He showed a decree of the Jonathan Vess league of land of date June 29, 1863, made by the county court having jurisdiction, partitioning the estate between the heirs of Vess and other part owners of the league. The plaintiff, Jonathan J. Seela, was a minor, and entitled as one of the heirs to a distributive portion. He was represented by guardian *ad litem*. The judgment making partition was shown. It was shown that the interest of Jonathan J. Seela was sold under execution issued February 4, 1867, for the costs in that partition proceeding adjudged against him. "Plaintiff then read in evidence the sheriff's deed, in the usual form of a sheriff's deed; . . . it recited the judgment on which the execution issued, and the issuance of execution thereon on the 4th of February, 1867, the advertisement of the property for sale, and its sale on March 5, 1867. The deed was dated March 5, 1867, duly acknowledged for record same day, but not recorded until November, 1871. It recited the payment of the amount bid for the property.

The court below, acting on the conclusion that the county court had no power to enter judgment and award execution against the property of Jonathan J. Seela, a minor, decided that the execution and sale were nullities, and rendered judgment for the plaintiff for the land.

*A. B. Peticolas,* for appellant, cited Fowler *v.* Evans, 26 Tex., 636, 638; Pasch. Dig., 1366; Ansley *v.* Baker, 14 Tex., 612; Withers *v.* Patterson, 27 Tex., 492–498; 13 Tex., 309; 6 Tex., 166; 4 Tex., 431.

*Francis M. White,* for appellee, cited Pasch. Dig., arts. 3783, 3908, 3909, 1315, 1320; Conkrite *v.* Hart, 10 Tex., 140; Brown *v.* Christie, 27 Tex., 73; Brown *v.* Lane, 19 Tex., 208; Howard *v.* North, 5 Tex., 290; Lubbock *v.* Vince, id., 415; Clegg *v.* Varnell, 18 Tex., 305.

WEST, ASSOCIATE JUSTICE.— The court below held that the sheriff's deed conveying the minor's land was a nullity, and the correctness of this action is the sole matter before us. Questions in this connection have been discussed, as to the validity of the execution by virtue of which the sale was made.

It has been claimed that an execution sued out in 1867 could not lawfully issue, based on a judgment such as the one in evidence, rendered in 1863. Cases have been cited to show that the judgment had become dormant, and that its lien was lost by the failure to issue execution in twelve months from the date of the judgment. Howard *v.* North, 5 Tex., 290; Conkrite *v.* Hart, 10 Tex., 140; Lubbock *v.* Vince, 5 Tex., 415; Shapard *v.* Bailleul, 3 Tex., 26.

It may be a sufficient answer to this to say that the record does not show affirmatively that there was any failure to issue execution within one year from the date of the judgment. Even if such were the fact, under the laws then in force, it is not certain that the purchaser under a sale made by virtue of such an execution would not be protected. Boggess *v.* Howard, 40 Tex., 158; Cook *v.* Brown, 45 Tex., 73; Taylor *v.* Snow, 47 Tex., 463; Cook *v.* Sparks, 47 Tex., 28; Ayres *v.* Duprey, 27 Tex., 593; Carroll *v.* Carroll, 20 Tex., 731; Shaw *v.* Ellison, 24 Tex., 197; Sydnor *v.* Roberts, 13 Tex., 598; Webb *v.* Mallard, 27 Tex., 82; Hancock *v.* Metz, 15 Tex., 209; Hawley *v.* Bullock, 29 Tex., 224; Andrews *v.* Richardson, 21 Tex., 287. Furthermore, the execution itself is not set out in the record, and the agreed case does not disclose whether it was the first or an *alias* or a *pluries* execution.

We must, therefore, in the absence of all evidence to the contrary, presume that the execution was lawfully and regularly issued, and that the levy and sale and sheriff's deed were all in due form. It also appears plainly that the court did not consider the question as to the validity of this execution, but expressly held that the county

court had no power whatever or authority to enter a judgment awarding any execution against appellee because he was a minor.

. This brings us to the sole question in the case, which is, did the sheriff's deed, under the facts of the case, vest a good title in the purchaser to the land in suit? Can such a sale under execution be upheld as against the rights of the appellee, who was a minor when it was made?

The statute requires in proceedings of this character in the probate court, for the distribution and partition of the estates of deceased persons among the parties entitled to it, that where there are minors, their interests shall be properly represented by a guardian. If such minor has no guardian already appointed, the court should appoint a guardian *ad litem*, whose duty it is to look after and protect the interest of such minor in the proceedings for partition. Hart. Dig., art. 1206; vol. 1, Pasch. Dig., arts. 1358–1362; also art. 1366. See, also, R. S., art. 2106 *et seq.*

In Montgomery *v.* Carlton, 56 Tex., 365, this court held that where there was service on the minor under this statute, even though no guardian *ad litem* was appointed, such judgment was not void, and was not subject to collateral attack by the minor whose land was sold under it.

. The record discloses that in this case a guardian *ad litem* was appointed. It further appears that the person who represented appellee as such guardian in this proceeding was a suitable person, being his grandmother, Rebecca Seela. She was, or had been in the same year when this judgment in the partition suit was rendered, and probably previous to its date, appointed guardian of the person and estate of the appellee, and performed her duties as such until her death. The exact date of that event is not disclosed, but we may presume that it did not occur before 1866, and probably not later than that date. The evidence also shows that the subject of the costs and expenses of the proceedings for partition were considered and passed upon by the court.

. The judgment recites that the amount of the charges made by the commissioners, who were appointed by the court to make the partition in question, was ascertained by the court, and their claim for that amount (stating it) was allowed and approved.

It also appears that the subject of the other costs that had naturally accrued in the case was considered by the court, with all the proper parties to the suit represented before it, including the guardian of the appellee. The entire amount of the bill of costs is not set out in the record, but it is quite evident that these costs were the

subject of judicial consideration, and were ascertained, and the proportionate share to be paid by each distributee was determined.

A formal judgment was entered of record requiring their payment, and, in default of such payment, this judgment directed execution to issue, as expressly provided in such cases by statute.

There is no pretense that these costs, justly due from the appellee, were ever in fact paid by his guardian, or in any manner tendered at any time, and the execution under which the property in question was sold was issued in accordance with the judgment, to enforce its collection; the judgment as to costs being expressly made by the statute a charge against the land received by each distributee. The result was, the sale of the land in suit, and its purchase by the appellant's vendor, who now claims title to the land by virtue of the sheriff's deed.

The provision of the probate act of 20th March, 1848, under which the execution was issued, is as follows: "Section 105. All expenses incurred in the partition of estates shall be paid by the parties interested in the partition, each party paying in proportion to the share he may receive. The portion of the estate allotted to each distributee shall be liable to his or her portion of the expenses; and if not paid, the court shall have power to order execution therefor in the name of the persons entitled to the same." Hart. Dig., art. 1214; 1 vol. Pasch. Dig., art. 1366. See R. S., art. 2133.

This provision of the statute, giving this special lien for costs, existed long before its re-enactment in the probate act of 1848. It was the fortieth section of the probate act of February 5, 1840. Hart. Dig., 1034. It was also subsequently embodied in the probate law of 9th August, 1876 (Gen. Laws of 1876, p. 123), and is now, in substance, a part of our present law on the subject. R. S., art. 2133.

In Fowler v. Evans, 26 Tex., 637, it was alluded to by the court, in disposing of that case. It has never, however, as to the matter now before us, we believe, yet received judicial interpretation.

It is contended that, in so far as this section of the probate act authorizes the summary sale for cash, under execution, of the real estate of an infant, it is unreasonable and wholly inconsistent with the laws then (and now) in force, regulating how claims and debts against the estate of minors are to be paid and adjusted.

It is also urged that the conflict in this respect between this act concerning the estates of deceased persons, and the act regulating the estates of minors, is so great that this provision cannot stand,

being in fact irreconcilable with, and plainly repugnant to, the provisions of the act concerning the estates of minors. This being so, the provision in the probate act under consideration, it is argued, must yield to, and be superseded by, the provisions of the other act, treating at large and especially of the estates of minors. This section of the probate act is so broad in its terms that it may hereafter be contended in other cases that may arise under it, that it is also inconsistent with acts of the legislature regulating the rights and liabilities of other classes of persons who may be affected by its terms, and must, therefore, also yield to those acts. For example, the question has not yet been presented, under this section, as to how far it would also conflict with, and be repugnant to, the acts regulating the separate estate of a married woman, if her separate property were to be sold, as it might be, under execution in this manner, to pay the costs and expenses of partition.

Nor has the question yet arisen as to the effect of the section under consideration on the estate of an idiot, or a person *non compos mentis*, if his land was sold, as it might be, under execution, under the provision of the statute now under consideration.

It is presumed, however, that the inconvenience and hardship resulting from the sale of the property of a minor, under this section, where he had been represented in court by a guardian, would be no greater than those growing out of the sale of the real property of a lunatic or a *feme covert*.

The probate act in which this provision of the law is found was passed and took effect on the same day as did the act defining the relations, rights and duties of guardian and ward. Both acts bear date the 20th March, 1848.

If there is, in fact, any inconsistency in the two acts, there is no rule of statutory construction that has been brought to our notice that would require this section under consideration to yield precedence, and to become, in fact, a dead letter, rather than the supposed opposing sections in the other act named.

In Lovett v. Casey, 17 Tex., 594, the court says, in relation to a similar question: "The two acts went into effect the same day, and both must be regarded as equally valid. If it can be done, we are bound to construe them in such a way as to sustain both." In that case the conflict was quite as apparent as in this.

In Neill v. Keese, 5 Tex., 33, this rule was applied to two acts passed, not on the same day, but at the same session. The court, in that case, say: "It would not be a reasonable mode of construing acts of the legislature so to construe them as to make one act repeal

another passed at the same session. It cannot be supposed that it was their intention that acts thus passed should abrogate and repeal one another." Scoby v. Sweatt, 28 Tex., 713.

In fact, unless the two acts present a very strong case, indeed, of repugnancy or irreconcilable inconsistency or palpable absurdity, a court would not be justified in holding that an act passed on the same day and at the same time as another act worked a repeal, in the same breath, of the other act. In such a case the power of the court to declare that one of two such acts shall survive at the expense of the other is very doubtful indeed.

The repugnance, under such circumstances, must be very marked, clear and unmistakable to authorize the adoption of such a course in any case. This is an elementary canon of construction with courts. The reason of it is that laws are presumed to be passed with deliberation and with a full knowledge of the existing laws on the subject.

This doctrine, of course, applies with far greater force to acts passed on the same day, as in this instance, than to those passed at the same or a subsequent session.

In the absence of an express repeal of an act, or where the intention and purpose to repeal is not plainly made manifest from the terms used, it is no part of the duty of courts to resort to technical subtleties to defeat the obvious purpose of the legislative power, in a matter over which that power has a constitutional right to exercise control. H. & T. C. R. R. v. Ford, 53 Tex., 364.

In Cain v. The State, 20 Tex., 361, the same views are announced and enforced. In that case, the two legislative acts under consideration were passed on different days of the same session, and the cogent reasons there given apply much more strongly to the present case. Austin v. G., C. & S. F. R. R., 45 Tex., 236.

Applying, then, these rules to the case in hand, let us see if there is in fact any such great repugnancy or irreconcilable inconsistency in the two acts as has been contended for.

The sections of the act concerning guardian and ward, supposed to be in conflict with the section of the probate act now under consideration, are sections 24 and 25 of the act concerning the estates of minors. Hart. Dig., arts. 1555, 1556. These sections provide for the raising of means to pay debts against the minor's estate, by a sale of his property, under the direction of the probate court. When carefully considered and compared with each other, there will not be found, we believe, to exist any very serious inconsistency between the provisions of this act and of the probate act.

There is no doubt that under sections 24 and 25 of the guardian's

act, before cited, the guardian could, and as a general rule he should, apply to the county judge for an order to sell such amount of the minor's property as may be necessary to pay any costs that may have been adjudged against the minor's estate in a partition suit had in the probate court.

If while such application was pending, or before the sale could be effected, an execution against the minor's estate were to issue, this court has more than once strongly intimated that in such a case an injunction would be granted to stay the sale under execution.

There can, in fact, be no doubt of the power and the duty of the district court to interpose in extreme cases of very great hardship, where it were deemed proper for it to exercise its equitable powers, and by a writ of injunction to prevent the sacrifice of the minor's estate, and direct, if necessary, a sale on credit.

Such cases, however, could in the nature of things very seldom arise, for in the partition proceedings out of which the writ of execution at last issues, the precaution is taken, by express provision of the statute, in all cases, to have the guardian of the minor made a party. He is thus bound to know the fact that the costs are due, or will become due, and that under the provision of the law, his ward's property is liable to summary sale under execution, unless he pays this claim for costs, which has already passed into the form of a judgment, and which he must have anticipated, and should have made, with the sanction of the probate court, ample provision for its prompt payment.

If, however, in fact, the conflict was far greater between the two acts in this particular than it appears to be, we would still hold that they could be reconciled. That they could be both construed so as to carry out the intention of the law-giver, and at the same time proper force and scope be given to both acts.

It may be that the legislature, in this particular class of cases, conducted as they are in the probate court, and under the immediate supervision of the county judge, and from which the minor's estate receives a benefit and present advantage, intended that the costs should not await the tardy and expensive course of collection which other claims against the estates of minors had to take.

The minor's proportion of costs necessarily could not be very large in amicable suits of this character, and the legislature may have deemed it better for all parties concerned to compel the prompt payment of these costs, by the guardian and others, by giving to the parties interested a swift remedy by execution for their collection.

If the guardian does his duty in such cases, no loss will be sus-

tained by his ward.  If he does not, he and his sureties can be held by the ward to answer for the damage occasioned to him by the unnecessary sacrifice of his property, resulting from the guardian's neglect of duty.

In Adriance, Guardian, *v.* Brooks, 13 Tex., 279, the question came up as to the legality of the issuance of execution, in the absence of any express statute authorizing it, against the estate of a lunatic, based on a judgment obtained against his guardian for a debt which his ward had contracted when of sound mind.  It was there strongly insisted, as in this case, that no writ of execution could issue on such a judgment, but that the guardian should pay the debt through the instrumentality of the county court, in the due course of the settle-ment of his ward's estate.  The court in that case held that the estates of a minor and a person *non compos mentis* were, by the law, placed practically on the same footing.   Hart. Dig., arts. 1566, 1577. See R. S., art. 2660.

After discussing the question at some length, the court comes to the conclusion that the writ of execution (even in the absence of an express statute to that effect, as in the case at bar) was the proper mode for enforcing the collection of the debt from the estate of the lunatic in the hands of his guardian, and places the estates of per-sons *non compos mentis*, and those of minors, on the same footing.

Chief Justice Hemphill concludes the opinion in that case with the following observation:   "When the estate of a minor or a per-son *non compos mentis* is likely to be sacrificed by sales under execu-tion, and to become insolvent, when otherwise, by sales made under the direction of the county court, it might be sufficient to pay the greater part of the claims, the district court would doubtless have power to enjoin such sales, and order the property to be sold on a reasonable credit."   To the same effect, see Tucker *v.* Brackett, 28 Tex., 339; also Moke *v.* Brackett, 28 Tex., 446.

In Thatcher *v.* Dinsmore, 5 Mass., 299, it was held that an execu-tion could run against the estate of a lunatic.  *Ex parte* Leighton, 14 Mass., 207, is to the same effect.

In Fox *v.* Hatch, 14 Vt., 340, it was decided that an execution could run against a married woman.  See Charles *v.* Lowenstein, 26 How. Pr., 29, and Moncrib *v.* Ward, 16 Abb. Pr., 354, note.

Mr. Freeman in his work on Judgments, sec. 142, says: "Those disabilities arising from infancy, from coverture, or from mental in-firmities, which render persons incapable of being bound by their contracts, do not have the effect of exempting any person from the control of courts."

In his work on Executions, sec. 22, he says: "It would be a con-tradiction of terms to say that all persons may be bound by judg-ments, and then declare that some persons are exempt from having executions issued against them."

The case at bar is believed to be a stronger case than that of Adriance, Guardian, v. Brooks, for in this case the law in so many words authorizes and directs the execution to issue; in that case it was silent. *Femes covert*, infants and lunatics, the estates of the living and the dead, are all alike comprehended within the broad and general terms used in the statute.

In such cases it is not for courts to engraft exceptions upon a statute, when the law-making power has not seen fit to do so. De Leon v. Owen, 3 Tex., 153.

In Upshur v. Pace, 15 Tex., 532, this court held that minors were not exempt from the penalty of forfeiture for failing to return field notes to the general land office within a prescribed period of time, fixed by the eighth section of the act of 10th of February, 1852, because they were not in terms excepted from its operation.

In Warfield v. Fox, 53 Pa. St., 382, it was held that a general statute of limitations, there being in it no express exception of such persons, bound minors and married women, though not named.

In Encking v. Simmons, 28 Wis., 272, it was held that a statute au-thorizing in general terms the foreclosure of mortgages by adver-tisement and sale, applied to a case where the mortgagor was insane at the time of foreclosure.

Dwarris, in his learned work on Statutes, lays it down as a general rule of construction, that infants, when not excepted specially, are bound by all acts of parliament, except those inflicting corporal punishment, and cites the Doctor & Student as authority. Potter's Dwarris, p. 122; Tynon v. Walker, 35 Cal., 634; Harrington v. Smith, 28 Wis., 43.

The general rule of statutory construction is, that, if there is nothing in the statute to limit its general words, they must have general effect. Courts cannot arbitrarily add or subtract from them. Our own court furnishes a strong illustration of this general rule which shows how rigidly it is adhered to. In State v. Kroner, 2 Tex., 493, this court held that the twenty-second section of the act of May 12, 1846, to organize the supreme court, fixing the time in which *all* transcripts should be filed in that court, being general in its terms, and making no exceptions whatever in favor of any party, in-cluded the state, it being within its terms, when it chose to become a litigant in its own courts. Deciding that in such a case, where

the statute made no exception, the state must prosecute her suits for civil rights in the same manner and under the same forms as private individuals. The suit of the state was accordingly dismissed.

We do not regard the two acts under consideration as in fact inconsistent with each other, and believe them both to be valid and binding laws, which it is the duty of this court to uphold and respect.

If evil consequences do flow from their rigid enforcement, and the property of minors and others is sacrificed under their operation, the courts can afford no relief except in the few very extreme cases heretofore alluded to, where, by reason of the peculiar facts of the case, the matter becomes the subject of equitable jurisdiction and control. Pool v. Wedemeyer, 56 Tex., 296.

In such cases, in general, it is for the law-making power, and not the courts, to apply the remedy. As a consequence from what has been said, we hold the sheriff's sale, and deed executed in this instance in pursuance of such sale, vested a good title to the land in suit in the purchaser, under whom the appellant holds.

The fact to which our attention has been called, that on the 25th of March, 1867, more than two weeks after the sale under consideration was made, M. V. Capers, the administrator on the estate of appellee's father and mother, had in his hands $700 belonging to their estate, cannot change the legal aspect of the question. The appellant has, under the agreed case, shown the superior title to the land, and the judgment of the court below is accordingly reversed, and judgment will here be rendered in favor of the appellant dismissing the case, appellee to pay all costs.

°  REVERSED AND RENDERED.

[Opinion delivered March 17, 1883.]