Case 69—ACTION BY DAVID STRUNK AGAINST THE PROC-
TOR COAL CO. FOR BREACH OF CONTRACT, OCT., 12.

## Proctor Coal Co. v. Strunk.

Appeal from Whitley Circuit Court.

M. L. JARVIS, Circuit Judge.

Judgment for Plaintiff. Defendant appeals. Reversed.

1.  Mines and Minerals—Contracts—Annulment—Evidence, in an action for breach of contract for mining coal, held to show that it was the intention of the parties that it should be superseded by a subsequent contract between them as to the same matter.

2.  Contracts—Consideration.—There is a sufficient consideration for a contract superseding one for the mining of all the coal in certain land, 5 per cent. of the price per ton for mining to be retained till completion of the work, the second contract waiving the right to mine all the coal, being only for a year, unless renewed by mutual consent, but providing for payment at the end of the year for all work done.

3.  Same—Fraud—Evidence.—Evidence, in an action for breach of a contract, held insufficient to show that the execution of a subsequent contract, superseding the one sued one, was procured by fraud.

T. L. EDELEN for appellant.

1.  We insist that the execution of the second contract covering it as it did the same subject matter as the first, was a complete merger of the first, and thereafter no right of action existed upon the first at all.

Proctor Coal Co. v. Strunk.

2. What fraud or misrepresentation the defendant relied on is not specified in the pleadings and is not elucidated by the evidence. There is absolutely no testimony, not even of the plaintiff himself, showing or tending to show that any fraud was practiced upon him in the obtainment of the second contract.

3. The instructions were abstract and misleading, and confounded the duty of the defendant under the two contracts when the first contract was merged in the second.

## AUTHORITIES CITED.

McCreary v. Day, 6. L. R. A., 503; Memphis v. Brown, 87 U. S., 20, Wallace, 289; Collyr v. Moulton, R. I., 90; 98 Amer. Dec., 370; Stowe v. Russell, 36 Ill., 18; Parish &c. v. U. S., 8; Wallace, 489; U. S. &c. v. Lamont, &c., 155 U. S., 303, 39 L. Ed., 160; Gilbert v. United States, 8 Wallace, 378.

TYE and DENHAM for appellee.

1. The only point upon which the appellant relies for a reversal is that the first contract was discharged by the second

2. The first contract is unlimited as to its duration and the second is limited to one year with privilege of renewal from year to year by mutual consent.

3. There can be no question that a later contract between same parties may discharge or abrogate a prior contract, but in order for it to do so these several facts as well as others must appear, to-wit:

(a.) The new contract must be entered into for the purpose of discharging first contract.

(b.) The new contract must cover the same subject matter and have the same scope as the old contract.

(c.) Second contract must be so far inconsistent with the first that the two can not subsist together.

Page on Contracts, vol. 3 secs. 1339, 1440; Amer. & Eng. Encys. Law, Vol. 3, page 891, Sec. 59; Anson on Contracts, page 342; Paul v. Meservey, 58 Me., 419.

4. The second contract is much more onerous on the appellee than the first. By the second contract the appellee is made to assume new burdens and the appellant is relieved from burdens which it had assumed in the first contract.

5. There is certainly evidence to support the verdict and no complaint is made that is it so excessive as to indicate passion or prejudice This court can not invade the province of the jury and say the verdict is against the weight of the evidence even if it be of the opinion that such is the case. (Bell, Coggeshall Co. v. Lewis, 28 R.)

### AUTHORITIES CITED.

The Hauser, Brenner & Fath Co. v. Tate & Co., 20 R., 1716; Blood v. Herring, 22 R., 1725; C. N. O. T. P. Ry. Co.'s Receiver v. Curd, 22 R., 1222; Page on Contracts, Vol. 3, Sec. 1340; Rhodes v. Ry., 55 L. R. A., 170; Evans v. Stone, 80 Ky., 78; Whitehead v. Root, 2 Met., 584; Billingsley v. Stratton, 11 Ind., 396.

OPINION BY JUDGE LASSING.—Reversing.

On the 17th of December, 1900, the Proctor Coal Company, by A. Gatliff, its president, made a written contract with David Strunk, by the terms of which said Strunk was to mine the coal within a certain area for a definite sum of money per ton, and was to comply generally with certain restrictions and regulations imposed by the agreement for the benefit of the Proctor Coal Company. Subsequently one H. F. Fenley succeeded Gatliff as president of the company, and a new contract was entered into by and between the company and David Strunk, by the terms of which Strunk was to mine coal for the company in the same territory, but the contract was an annual contract. By the terms of the first contract 5 per cent. of the contract price for mining was reserved by the company until final settlement between the parties, which by the terms of the contract would have been when all the coal to be mined within the area specified in the contract had been taken out. By the terms of the second contract the same part of the cost of mining per ton was retained, but the settlements were to be made at the end of each year while the contract was in force. This second contract required of the said Strunk a compliance with certain rules and regulations governing mining imposed for the mutual benefit of both parties to said contract. This second contract was entered into about the 9th of June, 1901. The defendant, Strunk, continued to operate the mine until

about the 1st of July, 1902, when he quit and brought his suit for damages against the company, and based his claim upon his rights as defined in the first contract. The company pleaded as a defense to this suit the execution of the second contract, and that the second contract superseded and annulled the first contract. The plaintiff by an amended pleading admitted the execution of the second contract, but claimed that there was no consideration for its execution, and that it was procured through fraud and misrepresentation. The allegations of the petition as amended and of the reply were traversed, and upon a trial before a jury a verdict for $900 was returned for plaintiff. Judgment was entered upon this verdict, and defendant appeals.

Appellant company complains that the trial court should have given to the jury a peremptory instruction at the conclusion of plaintiff's testimony, as he entirely failed to establish either want of consideration for the second contract, or that the execution of it was procured through fraud and misrepresentations. Appellee contends that the execution of the second contract did not nulify the first contract, but was merely a modification of same. A careful examination of the two contracts discloses this fact, that the only material difference between the first and second contracts is that the first contract provided for the mining of all the coal within a given area, and the retention by the company of 5 per cent. of the cost of the mining until the contract had been completed, be that 1, 5, or 10 years. The second contract provided that a settlement should be had at the end of each year, and that the contract might continue by mutual consent as an annual contract. Each contract contained certain stipulations and regulations as to the manner in which the mining should be done. In order to determine the question as to whether or not it was the intention of the parties that the second con-

tract should do away with and annul or supersede
the first contract, the testimony of the parties them-
selves is the best evidence. The company through its
president testified that he told the plaintiff, Strunk,
that the first contract was an unsatisfactory one, and
not acceptable to the directors of the company, and
that they wanted to enter into a new contract which
would be more beneficial in its terms to both parties,
and proposed the execution of the contract, showing
plaintiff that by its terms he would be enabled to
withdraw from the hands of the company the 5 per
cent. of his money which it had retained each year,
and not have it withheld from him until the com-
pletion of the contract. Plaintiff himself testifies
even stronger upon this point than did the president
of the company for he testified that the president of
the company told him that Gatliff, the former presi-
dent of the company, had no right to make the first
contract, and that it had never been ratified or ap-
proved by the directors of the company. Thus, from
the testimony of the two parties to this contract, it is
clear that they each understood that the second con-
tract was intended to take the place of the first con-
tract, and plaintiff operated under it for a year or
such a matter after he had signed it.

We come, then, to the two vital questions in the
case: (1) Was there any consideration for the exe-
cution of the second contract? (2) Was there any
fraud practiced by the company upon the plaintiff in
procuring its execution? By the terms of the second
contract the company agreed to make an annual set-
tlement with plaintiff, and to pay to him the amount
of money which it had retained in its hands, to wit, 5
per cent. of the cost of all coal mined by him during
that year. This clause of the second contract was more
favorable to the plaintiff than was the provisions reg-
ulating the payment of this retain in the original con-
tract, and this was the chief consideration or benefit

accruing to plaintiff in the execution of the second contract. By the execution of the second contract plaintiff waived his right to mine all the coal within the given area defined in the first contract, unless he should mine same within one year, or unless the contract should continue after the expiration of the first year by mutual consent. This was of benefit to the company, as it gave it the right to take charge of and mine the coal in such portion of said area as plaintiff should fail to mine within the year, if it desired to do so. In the case of Collyer v. Moulton, 9 R. I. 90, 98 Am. Dec. 370, the Supreme Court of Rhode Island held that where a contract remained executory it might be annulled by agreement, and the agreement to annul on one side was a consideration for an agreement to annul on the other. We are of the opinion that the second contract of itself shows there was a consideration sufficient to support its execution. In Parish, etc., v. U. S., 8 Wall. (U. S.) 489, 19 L. Ed. 472, the Supreme Court held that, if a party to a contract had any objections to the provisions of the contract, he should have objected before signing it, and that, having signed it, his mouth was closed against any denial that it superseded all previous arrangements upon the same subject. And in the case of U. S., etc., v. Lamont, Secretary of War, 155 U. S. 303, 15 Sup. Ct. 97, 39 L. Ed. 160, where the plaintiff in error had made a contract for certain work at a given price, and subsequently the parties had executed a contract at a lower price, and an attempt was made to compel the Secretary of War to execute the former contract, the court said: "We cannot perceive any duty which under those circumstances rested upon the Secretary of War to sign such a contract with the relator as would be required by the mandamus which is prayed. It cannot be reasonably contended that he is under any obligation to sign two contracts with the same parties for the

same work at a different price and under different
conditions.   Nor can it be urged with any greater
reason that the relator was entitled to have signed a
contract to do work for $19^7/_{10}$ cents per cubic yard
which he had subsequently made a voluntary con-
tract to do for $17^7/_{10}$ cents per cubic yard, and upon
conditions different form those mentioned in the first
proposition.  In order to justify the issual of the writ,
it would be necessary to hold that the second contract
was void, and thereby relieve the relator from obliga-
tions which he has assumed, and release him from the
binding force of terms and stipulations to which he
has subjected himself.   Inasmuch as no such duty as
that which the granting of this writ would seek to
enforce exists, and no right subsists in the relator
which this writ could secure him, there is no ground
for issuing it.''   The court then referred with ap-
proval to the case of Gilbert v. United States, 8 Wall.
(U. S.) 358, 19 L. Ed. 303, quoting with approval the
language of Justice Miller, who said:  ''If the claim-
ants had any objection to the provisions of the con-
tract they signed, they should have refused to make
it.   Having made it and executed it, their mouths are
closed against any denial that it superseded all pre-
vious arrangements.''  Following the rule laid down
in these cases, it is plain that plaintiff having signed
the second contract, and operated under it for almost
a year, he cannot now complain that the second con-
tract did not take the place of and supersede the first.

The only remaining question is, was the execution
of the second contract procured through fraud?   We
have carefully examined the testimony in this case,
and fail to discover wherein, even in the slightest
degree, it tends to support the contention of the ap-
pellee that the execution of the second contract was
obtained through fraud or misrepresentation.   The
company's president testifies that he talked the mat-
ter over fully with appellee, and that they agreed

upon the terms of the second contract, and he directed the secretary of the company to reduce their agreement to writing in duplicate form, one copy of which, when signed, was to be retained by the company and the other by appellee. Upon this point appellee says that he did not want to sign the second contract as prepared and submitted to him by the secretary of the company, but that thereafter he did sign it. He does not claim, nor is there any testimony tending to show, that the president of the company, or any one else, made any statement to him that was untrue, or that induced him to enter into the second contract. And while the proof shows appellee to be a man of moderate means, in the humble walks of life, there is nothing in either the proof or the provisions of the second contract indicating that he was overreached, or that any advantage was taken of him or his condition in the execution of the second contract. Nor does he claim that he did not thoroughly understand the second contract when it was prepared by the secretary and presented to him for his signature. Hence his contention that the second contract was procured through fraud and misrepresentation is not supported by any evidence whatever. And, this being true he is bound by the terms and provisions of the second contract, which (bearing evidence that there was ample consideration for its execution and no fraud being perpetrated on appellee in its execution annulled and superseded the first contract. Appellee's cause of action, if any he had, was upon the second contract. He sought by the pleas of no consideration and fraud to avoid the force and effect of the second contract, and, having failed to support his pleadings by any proof, the trial court should, at the conclusion of appellee's testimony and at the conclusion of all the testimony offered, have given a peremptory instruction to find for appellant company.

For this reason the judgment is reversed. with instructions to the trial court to dismiss the petition.