WASHINGTON LIFE INS. CO. et al. v.
REINHARDT. †

(Court of Civil Appeals of Texas. Dallas.
Dec. 9, 1911. On Motions for Rehearing and
Additional Conclusions of Fact, Jan. 6, 1912.)

1. INSURANCE (§ 84*)—AGENCY CONTRACTS—
COMMISSIONS ON RENEWAL PREMIUMS—DE-
DUCTIONS FOR COLLECTIONS.

The provisions in contracts of general
agency for a life insurance company for the
state of Texas, in connection with the provi-
sions for commissions to be allowed to the
general agent on renewal premiums, that, when
premiums on the policies issued through his
agency are not collected by him, there shall
be deducted from his commission "the cost of
collecting" the premiums, as stated in the
earlier of the contracts, or a certain per cent.
"for collecting" them, as stated in later ones,
being general in their terms, are not limited
to the premiums of policy holders who have
removed from the state, and whose premiums
could not then be collected by such agent, a
matter of only occasional occurrence, though
there be in such contracts a provision for al-
lowance to him of 2½ per cent. for collecting
premiums due in his district on policies not
issued through his agency, having reference to
policy holders moving into the state.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. §§ 111–114; Dec. Dig. § 84.*]

2. INSURANCE (§ 84*)—AGENCY CONTRACTS—
COMMISSIONS ON RENEWAL PREMIUMS—DIS-
CONTINUANCE OF AGENCY.

The provision in the last of several con-
tracts of general agency between plaintiff and
defendant life insurance company, each of which
provided for commissions to him for a number
of years on renewal premiums, with a deduc-
tion of "the cost" or a certain per cent. for
collecting them, where they were not collected
by him, and for discontinuance of the agree-
ment, at any time, for cause, or on notice,
"but said company shall be liable * * * for
renewal commissions to which said manager
may have become entitled prior to such dis-
continuance," does not entitle him on such
discontinuance to such commissions free from
any deduction for collection of the premiums by
the company.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. §§ 111–114; Dec. Dig. § 84.*]

3. INSURANCE (§ 84*)—AGENCY CONTRACTS—
COLLECTION OF PREMIUMS—POLICIES WRIT-
TEN BY OTHERS.

The provision in a contract of general agen-
cy for a life insurance company that said agent
agrees to collect, for a certain per cent., "all
or any premiums due in his district on policies
not issued through his instrumentality, such
as said company may furnish receipts for,"
does not require the company to furnish him
receipts therefor, and give him opportunity to
collect them.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. §§ 111–114; Dec. Dig. § 84.*]

4. INSURANCE (§ 84*)—AGENCY CONTRACTS—
COMMISSIONS ON RENEWAL PREMIUMS—DE-
DUCTIONS FOR COLLECTIONS.

A contract of general agency between a
life insurance company and "I. & Sons," pro-
viding for commissions on renewal premiums
for 10 years after the death of I., or after
cessation of his agency, provided for deduc-
tion of the "cost of collecting," where the pre-
miums were not collected by the agent. The
general agency contract made with plaintiff,
one of the sons, on the death of I., six years
later, and which provided for commissions on

renewal premiums for nineteen years, and ex-
tended this provision to the policies issued
through the old agency, provided for a deduc-
tion of 2½ per cent. for collecting, when the
agent did not collect the premiums, and in
later contracts between plaintiff and the com-
pany, the provision was for deduction of 2 per
cent. for collecting, when he did not collect the
premiums. Held, the provision in each of the
contracts after the first as to the amount of
deduction for collecting, being general in its
terms, and not limited to the policies written
under the particular contract, displaced its
predecessor, and applied to all subsequent re-
newal premiums, whatever contract the poli-
cies were written under.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. §§ 111–114; Dec. Dig. § 84.*]

5. INSURANCE (§ 84*)—AGENTS—CONTRACTS—
PRACTICAL CONSTRUCTION.

If a contract of general agency for a
life insurance company be doubtful as to wheth-
er a provision thereof for deduction of 2 per
cent. for collecting when the premiums are
not collected by the agent applies, not only to
premiums issued under that contract, but to
those issued under previous contracts, the
first of which provided for deducting of the
"cost of collecting," and others of which pro-
vided for a deduction of 2½ per cent. under
such circumstances, the practical construction
that it did so apply given by the parties in ne-
gotiations for termination of the agency, and
after its termination, should control.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. §§ 111–114; Dec. Dig. § 84.*]

6. CONTRACTS (§ 237*)—CONSIDERATION—MOD-
IFICATION OF CONTRACT.

Where, owing to new legislation, by mu-
tual understanding between a life insurance
company and its general agent, it gives up its
business in the state, and he loses the profits
on business which he would have written had
it remained in the state, and agrees that for
renewal premiums thereafter contracted by the
company on policies theretofore written by him
his commissions shall be a certain amount
less than stipulated in their antecedent con-
tract, such new contract is supported by suffi-
cient consideration.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 1119–1122; Dec. Dig. § 237.*]

Error from District Court, Dallas County;
E. B. Muse, Judge.

Action by Sidney Reinhardt against the
Washington Life Insurance Company and an-
other. Judgment for plaintiff. Defendants
bring error. Reversed and rendered.

Locke & Locke, for plaintiffs in error.
Etheridge & McCormick, for defendant in er-
ror.

TALBOT, J. Sidney Reinhardt brought
this suit against the Washington Life In-
surance Company of New York, and by his
original petition sought to recover, among
other small amounts not necessary to state,
$1,411.26 as a commission at the rate of
7½ per cent. on $18,816.82 of premiums, and
$4,284 as a commission at the rate of 5 per
cent. on $856,850 of premiums collected by
said insurance company on policies negotiat-
ed by the plaintiff as its agent located in the
city of Dallas, Tex. The company answered,

admitting collection of the premiums, and, with the exception of commissions which it alleged it had paid the plaintiff, Reinhardt, on certain of its premiums, it admitted liability for a commission of 5½ per cent. on the sum first mentioned, and 3 per cent. on the sum last mentioned, which amount it alleged it had tendered to plaintiff and he had refused to accept. The dispute, therefore, between the plaintiff and the defendant company related to the rate of commission to which the plaintiff was entitled; the difference between that claimed and that admitted being 2 per cent. Pending the suit an agreement was made whereby the plaintiff accepted, without prejudice to his rights in the controversy over the difference of 2 per cent., the sum previously tendered by the company, and thereupon he filed an amended petition wherein judgment was sought against the insurance company for the difference of 2 per cent. on premiums of $135,554.60, collected by said company, partly before, but mostly after, the institution of the suit and during its pendency. By plaintiff's amended petition the Pittsburgh Life & Trust Company was made a party defendant, and judgment was sought against it as well as the Washington Life Insurance Company of New York; the allegation as to the liability of the Pittsburgh Company being that it had taken over the business and assets of the New York Company and had assumed its obligations. The specific sum claimed was $2,711.09. The companies defended on the grounds that the plaintiff under the terms of his contracts had no right to the 2 per cent. commission claimed, and that at the time of the cessation of his agency the contracts were so interpreted by himself and the New York Company, and a supplemental agreement made between them to that effect. Upon the conclusion of the evidence the court instructed the jury to return a verdict in favor of the plaintiff for $2,711.09, the amount sued for by him, with interest thereon at the rate of 6 per cent. per annum from January 1, 1910, and refused the defendants' request for a peremptory instruction in their favor. The jury returned a verdict in accordance with the court's instruction, upon which judgment was rendered in favor of the plaintiff against both defendants for the sum of $2,793, and they bring the case to this court by writ of error.

It appears that there were five agency contracts successively in force between the plaintiff and the defendant the Washington Life Insurance Company of New York. The first, made May 23, 1893, was with the firm of I. Reinhardt & Son, composed of Isadore Reinhardt, Solomon Reinhardt and the plaintiff, Sidney Reinhardt. Solomon Reinhardt afterwards retired, and Isadore Reinhardt died, and the plaintiff succeeded to their interest. The other contracts were with the plaintiff Sidney Reinhardt alone, doing business under the firm name of I. Reinhardt & Son, and were made October 24, 1899, March 30, 1905, February 23, 1906 and December 18, 1906, respectively. Each of the contracts declares, in substance, that the agency is created for the purpose of procuring applications for life insurance and effecting such insurance as shall be satisfactory to the Washington Life Insurance Company, and for the purpose of collecting and promptly paying over all premiums when collected. None of the contracts contain any provision for the continuance of the agency to any particular date or for any particular period. except the contract of March 30, 1905, which provides that, "unless terminated by either party in accordance with the printed provisions above, this contract shall continue until December 31, 1905." The contract of May 23, 1893, however, provides that "either party thereto may terminate it by giving to the other thirty days' notice, in writing, to that effect, and that the company may, at any time, for good and sufficient cause, discontinue the agency." The contracts of October 24, 1899, and March 30, 1905, provide: "Either party hereto may at any time terminate this agreement by giving to the other thirty days' notice in writing to that effect, and it is further agreed that the company may at any time, for good and sufficient cause, and without such notice, terminate this agreement." The contracts of February 23, 1906, and of December 18, 1906, provide that contract and agency created thereby may be terminated in any one of the following ways: "(1) By the said company, at any time, without notice, for good and sufficient cause; (2) by the said company, at any time, without the assignment of any cause, but on giving to the said manager (Reinhardt) thirty days' notice in writing; (3) by the said manager, subject to the provisions of the last preceding paragraphs, at any time, on giving to the said company thirty days' notice in writing." The second, third, and fourth contracts further provide that the appointment of the plaintiff, Sidney Reinhardt, as manager for the purpose of procuring applications for life insurance, etc., was subject to the condition that the Washington Life Insurance Company should continue to be legally authorized to transact business in the district named therein, but should its authority be at any time revoked or otherwise terminated, or should said company cease to do business in said district, then the agreement should not bind the company for any liability for a discontinuance of the agreement during such period, as the company should not do business in such district. The last contract also contains this provision, and in addition thereto, which is not found in the other contracts, the following: "But said company shall be liable to the said manager for renewal commissions to which said manager may have become entitled prior

to such discontinuance under this or previous contracts."

With reference to compensation to be allowed the general agents of the company on policies issued through their instrumentality, the contract of May 23, 1893, provides as follows: "On the renewal premiums of the second and subsequent years paid to said company on the above policies 7½ per cent. limited as stated below. * * * The commissions, as above, less the cost of collection, if any, subject to the stipulations and limitations herein contained, shall be paid to said general agents during the continuance of this agency or for ten years after the death of Isadore Reinhardt or after his agency ceases, provided they shall continue to act exclusively as general agents for the said company for the term of three years." The contract of October 24, 1899, provides: "On the renewal premiums of the second and 18 subsequent years paid to said company on the above policies, except 5 annual payment and double endowment policies a commission of 7½ per cent. On the renewal premium of the second and subsequent years paid to said company, on 5 annual payment and double endowment policies (the latter for ten years only) a commission of 5 per cent. The commission, as above, less the cost of collection, subject to the lien, assignment, stipulations and limitations herein contained, shall be paid to said general agent as herein stipulated." The contract of March 30, 1905, provides: "On renewal premiums for 9 subsequent years paid to said company on above policies except 5 annual payments, double endowment, N. P. and annual dividend policies * * * 7½ per cent. On renewal premiums for four subsequent years on 5 annual payments, and ten subsequent years on double endowment policies 5½ per cent. No renewal commission on N. P. policies. On annual dividend policies 14 renewals of 5 per cent. The commissions, as above, less the cost of collection, subject to the lien, assignment, stipulation and limitations herein contained, shall be paid to said general agent as herein stipulated." The contract of February 23, 1906, provides: Classes A, B, and C: "Second year renewal 7½ per cent. and not to exceed 18 subsequent renewals of 7½ per cent." Class D: "Second year renewal 7½ per cent. and not to exceed 8 subsequent renewals of 7½ per cent." Class E: "Ten renewals of 5 per cent." Class F: "Fourteen renewals of 7½ per cent. On all nonparticipating plans except term and preferred class five renewals of five per cent. On preferred class plans, nonparticipating, fourteen renewals of five per cent." The contract of December 18, 1906, provides: "The compensation of the said manager for all services (other than the collection and remittance of premiums on policies dated prior to January 1, 1907, and not issued through his instrumentality) rendered by him during the continuance of this agreement, shall be as stated in the following sections of this agreement designated as A and B, respectively. * * * (B) Renewal Commissions. On all policies issued with annual premiums or installments thereof a commission of seven and one-half per cent. of the premiums collected and remitted by the said manager will be paid for a term of nine years; i. e., from the second to the tenth years inclusive, except, that such renewal commission will not be paid on term policies, and that on endowment policies with less than twenty annual premiums the rate of such renewal commission will be five per cent. * * * In consideration of the collection and remittance to the said company, by said manager, of premiums on policies dated prior to January 1, 1907, and not issued through his instrumentality, and for which premiums the said company may furnish receipts to him, the said company agrees to pay to said manager two per cent. of such premiums as and when remitted." Each of said contracts, except the fifth, further provides: "The said general manager agrees to collect for and remit to the said company for a remuneration of 2½ per cent. all or any premiums due in his district on policies not issued through his instrumentality, such as said company may furnish receipts for signed by one of its officers." And the second, third, fourth, and fifth provide: "It is understood and agreed that the renewal commissions on the business of I. Reinhardt & Son standing on the books of the company on the 24th day of October, 1899, shall be continued and paid as if section 13 of contract dated Oct. 24, 1899, had formed a part of the old contract of May 23, 1893."

In addition to the foregoing, the first contract provides that: "When premiums upon policies of the said general agent are not collected by said general agent the cost of collecting such premiums shall be deducted from the commission to be allowed on said premiums." The second and third provide that: "When premiums upon policies of the said general agents are not collected by said general agent, 2½ per cent. for collecting such premiums shall be deducted from the commission to be allowed on said premiums." The fourth and fifth provide that: "When premiums upon policies issued through the instrumentality of said manager, but not collected by him, shall be subject to a deduction of two per cent. of such premiums from the commissions allowed on said premiums to said manager." Under each of the first four contracts a "flat" allowance is provided for of such a sum as, in connection with the collection of commission on premiums on policies written through other agencies, makes up a total of $416.66 per month or $5,000 per year. Under the last contract, such an allowance of $375 per month is provided for, without regard to

the amount derived from such collection commission. Each of said contracts further provides: "Commissions shall accrue only as the premiums are paid to the company in cash." It was shown that occasionally Texas policy holders would remove to other states, and that policy holders of states other than Texas would remove to Texas; that in most of the removals from Texas the plaintiff, Reinhardt, continued to collect the premiums, but in some instances policy holders preferred to pay at nearer points. In that event, the renewal receipts were forwarded by the company to the point preferred by the policy holder, and a collection charge was deducted from the plaintiff's commission. In all cases, however, where the premium was remitted direct to the home office of the company, no deduction was made by the company from the renewal commissions of the plaintiff. The defendant the Washington Life Insurance Company withdrew and quit doing business in Texas because of what is known as the "Robertson Act," passed by the Legislature in 1907, and the plaintiff's agency ceased on June 30, 1907. Up to the time the company retired from the state the plaintiff, Reinhardt, was uniformly furnished with receipts for the renewal premiums, but after that time such receipts were not furnished. All premiums on which commissions are claimed in this suit were collected after the Washington Life Insurance Company withdrew from Texas, and none of them was collected by the plaintiff. Since June 30, 1907, the insurance company has been paid in renewal premiums by Texas policy holders, whose policies were written through the instrumentality of defendant in error, $135,354.60. Of such renewal premiums so paid, $62,063.18 was paid on policies written under the first contract, $40,014.13 on policies under the second contract, $10,255.56 on policies under the third contract, $20,936.72 on policies under the fourth contract, and $2,284.91 on policies under the fifth contract. The Pittsburgh Life & Trust Company took over the assets and business of the Washington Life Insurance Company, assumed said agency contracts, and some time thereafter concluded to comply with the Robertson act and do business in the state of Texas. After this the last-named company desired plaintiff to enter into an agency contract with it, but he declined to do so. Prior to its retirement from Texas, certain correspondence took place between the Washington Life Insurance Company and the plaintiff in relation to the Robertson act and a probable termination of plaintiff's agency. In a letter of date May 17, 1907, the plaintiff, among other things touching the Robertson act, wrote: "For our part we are not able to see how the company can comply with the law. * * * It is our idea that, if the company intends to cease writing new business in Texas, further expenses and effort to attempt to do business would be futile, and in such an event the wisest course to pursue would be to adjust conditions accordingly, and, until this obnoxious (act) is repealed, carefully look after our renewals, and await the time when we can renew our energies and efforts under more favorable conditions." May 21, 1907, Tatlock, president of the company, wrote: "It is not our intention to comply with the law. * * * We must assume, of course, that the law will not be repealed this year. On this assumption, and in view of what you say regarding the impossibility of building up an organization unless the company decides to stay in the state, we deem it best to give you notice at this time that your contract must be modified as of June 30th, so far as the payment of allowances to you is concerned." On May 27, 1907, the company wrote the plaintiff as follows: "Further consideration of the new Texas law shows us that unless we are willing to comply with the tax provisions thereof we must withdraw from the state before July 10th. Inasmuch as that date is not far off, we must come to an early decision and I am writing to you to-day to present the three alternatives of possible action and to ask you your views upon them. The question under discussion, of course, relates solely to the collection of old business. First. It is possible for the collections to remain in your Dallas office, continue to be made by you and you to pay the state tax thereon in place of the collection fee which you would have to pay in case the premium were collected through some other agency. I merely mention this because it is one of the alternatives. I do not see how it can meet with your approval. Second. Notices can be sent that all Texas premiums are hereafter to be paid at the home office of the company in New York. In this case you would be charged the collection fee under your contract of 2 per cent. Third. It has occurred to us that perhaps you might think that the time has come for us to open an office in Oklahoma. If this is the case we are willing to enter Oklahoma for new business, under your supervision and in your name, such offices to be your agency and run at your expense. In this case the Texas collections could be made by you without charge for collection fee or for tax if made from the Oklahoma office." On July 4th plaintiff replied that: "After careful and thorough investigation and consideration of the question of doing business in Oklahoma, we have reluctantly come to the decision that at this time we could not do the company nor ourselves justice in opening an office and organizing an agency in that territory. Having arrived at this decision to-day, it is only proper that we communicate with you immediately advising you of our inability to take care of the collection of

Texas renewals, so that you may have timely opportunity to notify the assured as to the payment of premiums direct to the home office." Following these letters the company rendered weekly statements to the plaintiff of premiums collected by it, and on July 30, August 7, August 14, and August 21, 1907, respectively, remitted to plaintiff the commission due thereon, less the collection charge of 2 per cent. These remittances were made in the forms of checks or drafts, accompanied by vouchers which the plaintiff was requested to sign and return to the company. The checks were accepted, indorsed, and the money collected on them by the plaintiff, but only one of the vouchers was signed and returned by him. On August 20, 1907, the plaintiff wrote the company, acknowledging receipt of the remittance of August 14th, and stated, in effect, that he had been advised by his attorneys that he was entitled, under the conditions of the agency contracts, to full renewal commissions, and was not chargeable with the 2 per cent. which the company had deducted as collection charges. The record does not suggest any want of ability, efficiency, loyalty, or fidelity on the part of the plaintiff, Reinhardt. On the contrary, it appears that the services rendered by him through all the years of his agency proved satisfactory to the insurance company.

There are two assignments of error: The first is that the trial court erred in refusing the defendants' specially requested charge No. 1, directing a verdict in their favor. The second asserts that the court erred in peremptorily instructing the jury to return a verdict in favor of the plaintiff and against the defendants for $2,711.09, with interest at 6 per cent. from January 1, 1910. The propositions contended for by the plaintiffs in error, among others, which, in the view we take of the case, need not be stated, are practically, if not identically, the same under each of these assignments, and are as follows: (1) "The agency contracts sued on contemplate the deduction of a collection charge from the commission otherwise payable to the plaintiff, when from termination of his agency or other cause the premiums are not collected by him." (2) "The negotiations between the plaintiff and the company attending the termination of the agency, and their course of business following the same, constitute an agreement for the deduction of 2 per cent. of all premiums collected by the company on policies written by the plaintiff." (3) "The negotiations between the plaintiff and the company attending the termination of the agency and their course of business following the same constitute an interpretation by them of the collection charge provision of the agency contracts, and effect should be given to such interpretation." (4) "The propriety of the deduction is not affected by the circumstance that the com-

pany does not longer intrust the premiums to the plaintiff for collection."

[1] After careful consideration of the question in the light of the record before us, and the exhaustive briefs of the respective counsel of the parties, we have reached the conclusion that the agency contracts sued on contemplate, as contended by the plaintiff in error, that, when from the termination of his agency or other cause the renewal premiums were not collected by the plaintiff, a deduction of as much as 2 per cent. of such premiums should be made as a collection charge. We do not concur in the view entertained by counsel for defendant in error to the effect that the provisions under which plaintiffs in error claim the right to make this deduction and the provisions whereby the defendant in error agrees to collect and remit to the company, for a remuneration of 2 per cent., such premiums on policies not issued through his instrumentality as the company furnished him receipts for are reciprocal. Nor do we agree with the contention that the clause in the fifth contract to the effect that the company should be liable to defendant in error for renewal commissions to which he may have become entitled prior to the discontinuance of his agency under that or the previous contracts alone survived the termination of the agency, and therefore affords the sole criterion by which must be measured the rights of the agent and the liability of the principal. We agree in the main with the views expressed by counsel for the plaintiffs in error, and shall adopt largely his line of argument. The provision of the contract under which the deduction of 2 per cent. is sought to be justified is couched in plain and unambiguous language, and no fraud or mistake is claimed, nor was there any extraneous evidence submitted to show any mutual understanding thereof in accordance with the plaintiff's contention. This provision in each of the contracts is general in its terms, is without limitation or qualification, and under elementary rules must have general effect. Laughter v. Seela, 59 Tex. 177. The idea that the deduction provision and the provision for a collection fee on policies not issued by the plaintiff are compensatory or reciprocal seems to be based on testimony tending to show that occasionally Texas policy holders would remove to other states, and that in some such cases their premiums would be collected by agents of the insurance company in such state. The effect of the argument, as we understand it, is that, because the plaintiff could not collect premiums on the policies of other agents after the termination of his agency and so earn the collection fee mentioned, he should not have to so suffer any deduction from the commission on his own policies, although the actual work of collecting the premiums was performed by others; that, in view of such probable loss

and to avoid the same, the two compensatory stipulations were inserted in the contracts. The contention is not sound. The removal of Texas policy holders to other states was in the language of the witness "only an occasional occurrence," and in most of such removals the plaintiff continued to collect the premiums. The contingency of such removals, therefore, must have been of little consequence to either party. If the sole purpose of the provision in question was to authorize a deduction in the case of Texas policy holders who removed to other states and whose premiums on that account were not collected by the plaintiff, it is, indeed, singular that such general language as is found in the provision was selected by the parties to express so limited an intention. Much more singular is it that they should select, not the same, but substantially the same, language five different times in a period of about fourteen years to express such intention. Again, if they were intended to be compensatory, in the sense which plaintiff urges, they doubtless would have provided that the amount of the premiums on which the plaintiff should earn the collection fee should be precisely the same as the amount of the premium on which plaintiff's commission should be reduced by the deduction of a collection charge. This they did not do. There is no intrinsic or extrinsic evidence in the record of any intention that the one provision should be the reciprocal of the other, and without some such evidence we would not be authorized to say that such was the intention of the parties to the contract. The language of the provisions clearly imports that they were intended in the one case to give, and in the other to withhold, a fair compensation for services rendered or not rendered in collecting the premiums.

[2, 3] The contention that the clause of the fifth contract reading, "But said company shall be liable to the said manager for renewal commissions to which said manager may have become entitled prior to such discontinuance under this or previous contracts," alone survived the termination of the agency, and consequently affords the sole criterion by which must be measured the rights of the agent and the liability of the principal, is equally untenable. Plaintiff's right to renewal commissions does not depend upon the provision here referred to alone. If the contracts entered into prior to the one in which this provision is found had expired and with them all right to renewal commissions, save as such right may exist by reason of such provision, then no commission at all is payable to the plaintiff. The provision does not attempt to restore any right that has ceased; nor does it attempt to give any new or larger compensation than before. It merely provides for a continuance of existing rights. That the right to such commissions did not cease upon the expira-

tion of the contracts is shown, not only by the plain terms of the contracts promising commissions over a long series of years and providing for the payment of a less sum in case a premium should not be collected by plaintiff, but also by the fact that the insurance company paid such commissions to the plaintiff for a number of years, and he accepted them. Therefore the right to such commissions having continued after the expiration of the respective contracts and until the termination of the agency under the fifth contract, there is no authority for saying that they ceased except as preserved by the provision in question. It is clear that said provision continued only such right as existed under the contracts executed prior to the execution of the contract of December 18, 1906. What right then existed must be determined by the terms of the previous contracts, and, looking to them, we think the conclusion cannot be escaped that they unquestionably contemplate the deduction of 2 per cent. of all renewal premiums not collected by the plaintiff as a collection charge. Neither the stipulation that "commissions shall accrue only as the premiums are paid to the company in cash," nor the one to the effect that "the said manager agrees to collect and remit to the said company for a remuneration of two per cent. such premiums on policies not issued through his instrumentality as the company may furnish him receipts for," and the fact that such receipts were not furnished after the agency ceased, militates against the conclusion reached. The contention that it was a violation of duty under the contracts and a breach thereof to omit to send plaintiff the renewal receipts for collection cannot be maintained. The company was not bound by the contracts to permit plaintiff to collect the renewal premiums, and to transmit to him the renewal receipts for that purpose. There is no promise in any of the contracts that the collection of the renewal premiums shall be intrusted to the plaintiff for any time whatever. On the contrary, each of the contracts provides, as has been seen, that the agency may be terminated at any time for any cause on 30 days' notice. It is clear, therefore, that when the employment was terminated in accordance with that provision, or was terminated by mutual consent, the company violated no duty, and breached no contract, by ceasing to send plaintiff the renewal receipts.

[4] But it is contended that the contract of May 23, 1893, simply provides for the payment of "cost of collecting" premiums on policies not issued by the plaintiff, and that the undisputed evidence is that the collection of these premiums involved the insurance company in no cost whatever. This contract, it is true, does not specifically state the amount which might be deducted from plaintiff's commissions as a collection charge on premiums not collected by him.

It simply provides for the deduction of the "cost of collecting" the premiums, but we think this provision was displaced as to premiums subsequently collected by the corresponding provision of the contract of October 24, 1899. The record discloses that the contract of May 23, 1893, was with Isadore Reinhardt, Solomon Reinhardt, and the plaintiff, Sidney Reinhardt; that Solomon Reinhardt retired from the firm, and that Isadore Reinhardt died August 10, 1899. Thereupon the contract of October 24, 1899, a new contract, was made. This contract constituted the plaintiff alone the agent of the company, and gave to him substantially the same powers as formerly had been conferred upon the firm. The old contract promised renewal commissions "during the continuance of the agency or for ten years after the death of Isadore Reinhardt, or after his agency ceased." It seems quite clear to us that it was the intention of the parties to change by the new contract or contract of October 24, 1899, the basis of renewal compensation on business written under the first contract. This is indicated and the change effected by that clause of the contract which reads as follows: "It is understood and agreed that the renewal commissions on the business of I. Reinhardt & Son standing on the books of the company on the 24th day of October, inst., shall be continued and paid as if section 13 of the new contract of this date had formed a part of the old contract of May 23rd, 1893." By section 13, here referred to, commissions were promised on each policy of the class mentioned in said contract for the second and for 18 subsequent years of its life; that is, in all, for 19 years, instead of for merely 10 years following the death of Isadore Reinhardt. Therefore, as the contract of May 23, 1893, had been in force for six years and five months, this change amounted to an extension of the commission period from about two years and seven months in the case of a policy written at the commencement of the agency to nine years in the case of a policy written just before its expiration. In this same contract of October 24, 1899, the deduction provision which in the contract of May 23, 1893, had theretofore provided that, "when premiums upon policies of the said general agents are not collected by said general agents, the cost of collecting such premiums shall be deducted from the commission to be allowed on said premiums," was changed to read as follows: "When premiums upon policies of the said general agent are not collected by said general agent, 2½ per cent. for collecting such premiums shall be deducted from the commission to be allowed on said premiums." From these provisions and the practically unbroken course of dealing uniformly extending over a long period of time, it is manifest, we think, that by the contract of October 24, 1899, the parties intended to and did substitute for the indefinite amount of compensation promised under the first contract the definite amount of 2½ per cent. Thereafter commissions accrued and were paid, it seems, not under the first contract, but under the provision of said contract of October 24, 1899, applicable thereto. As suggested by counsel for plaintiff in error, the reason for the change may have been a desire for uniformity of compensation to avoid the necessity of separate bookkeeping for the business written under the two contracts. The old contract gave commissions for a shorter period than the new. It provided that, if the premiums were not collected by I. Reinhardt & Son, the cost of collection should be deducted. This was an indefinite expression, requiring doubtless considerable work of accounting the result of which could only be approximate. By the new contract the commission period was made uniform and the deduction of a definite percentage for cost of collection agreed upon. So also it would seem that each deduction provision was displaced by the corresponding provision of the succeeding contract, and that as all premiums in question were collected after the execution of the contract of December 18, 1906, the last contract, the amount of the deduction is regulated by the provision of that contract, namely, 2 per cent. of the premiums. Each of the other three contracts, like that of October 24, 1899, is general in form, and none contains any provision restricting its operation to the business done thereunder. On the contrary, the contracts of March 30, 1905, and February 23, 1906, each repeats the agreement with respect to the commissions payable on business under the first contract, that the renewal commissions on the business of I. Reinhardt & Son, standing on the books of the company on the 24th day of October, 1899, should be continued and paid as though section 13 of said contract of October 24, 1899, had formed a part of the old contract of May 23, 1893. The deduction clause of each contract covers the same subject-matter, namely, the future collection of premiums on policies issued by the plaintiff. Each of said clauses is general in its terms, and is not limited to the policies written under the particular contract. It would seem from these facts that each later provision displaced its predecessor. This is indicated by the general nature of the contracts, because each of them in some way relates to or provides for the business written under some of the preceding contracts.

[5] Again, the negotiations between the plaintiff and the insurance company attending the termination of the agency, as shown by the correspondence referred to in a former part of this opinion, and their course of business following the same, constituted an interpretation by them of the collection

charge provision of the agency contracts. This interpretation was, we think, that the 2 per cent. deduction provision contained in the contract of December 18, 1906, was of all such provisions alone in force, and applying the familiar principle that, if the construction of a contract be doubtful, the practical construction given it by both parties shall control its interpretation, we hold that in this case effect should be given to the said interpretation of the plaintiff and the insurance company.

[6] We are further of opinion that the negotiations between the plaintiff and the defendant the Washington Life Insurance Company attending the termination of the agency and their course of business following the same, as disclosed by the correspondence referred to, and other evidence in the case, constitute an agreement, supported by a sufficient consideration, for the deduction of 2 per cent. of all premiums collected by the company on policies written by the plaintiff. It seems to be well settled that an executory contract may be changed at any time by agreement, and the change in the obligations and rights of one party will constitute a sufficient consideration for the change in the obligations and rights of the other. The defendant the Washington Life Insurance Company ceased to do business in Texas evidently because it regarded the acts of the Legislature commonly known as the "Robertson Act" and the "Gross Receipts Tax Act" inimical to its interest, and thought that, because of the new conditions imposed upon it by said acts, it could not safely do business under them. In this view the plaintiff concurred. In his letter to the company bearing date May 17, 1907, he said: "For our part we are not able to see how the company can comply with the law." Many insurance companies were retiring from the state, and it would seem that the situation justified the parties in discussing the matter and in making a new agreement mutually satisfactory and just, in view of the changed conditions. Realizing this, the plaintiff in his letter of May 17th, above referred to, wrote the following: "It is our idea that if the company intends to cease writing new business in Texas * * * the wisest course to pursue would be to adjust conditions accordingly, and until this obnoxious [legislation] is repealed, carefully look after our renewals and await the time when we can renew our energies and efforts under more favorable conditions." On May 27th the company wrote the plaintiff that three courses seemed to be open for the collection of the renewal premiums: First. The plaintiff might continue to collect in Texas the renewal premiums, himself paying the state tax. "Second." It was stated: "Notices can be sent that all Texas premiums are hereafter to be paid at the home office of the company in New York. In this case you would be charged the collection fee under your contract of. 2%." Third. The plaintiff might represent the company in Oklahoma, opening an office there, and collecting there the Texas premiums. On July 4th the plaintiff replied that "after careful and thorough investigation and consideration of the question of doing business in Oklahoma, we have reluctantly come to the decision that at this time we could not do the company nor ourselves justice in opening an office and organizing an agency in that territory. Having arrived at this decision to-day, it is only proper that we communicate with you immediately advising you of our inability to take care of the collection of Texas renewals, so that you may have timely opportunity to notify the assured as to the payment of premiums direct to the home office." Accordingly, policy holders were notified to pay premiums direct to the company, which they did, and the company rendered weekly statements to the plaintiff showing the amount of premiums collected by it, and that the commission due him thereon was equal to that stipulated in the original contracts less a collection charge of 2 per cent. Four remittances of commissions were made to him in accordance with these statements and accepted by him. No objection appears to have been made to the company's statement in its letter of May 27th, nor was any complaint made of the deduction of the 2 per cent. as a collection charge until August 20, 1907, after his attorneys had advised him that in their opinion the deduction was unauthorized, and even then the later remittance of August 21st was accepted notwithstanding the deduction. Thus it appears, we think, that by mutual understanding the company gave up its business in Texas, and that the plaintiff lost the profits on the business which he would have written had the company remained in the state, and agreed that for premiums collected by the company his commissions should be 2 per cent. less than stipulated in the antecedent contracts. The authorities are that a new agreement made under such circumstances is supported by a sufficient consideration, and is valid and binding. City of Galveston v. Railway Co., 46 Tex. 435; Caples v. Port Huron Engine & Thresher Co., 131 S. W. 303; Proctor Coal Co. v. Strunk, 123 Ky. 520, 96 S. W. 603, and cases there cited; Foley v. Storrie, 4 Tex. Civ. App. 377, 23 S. W. 442.

It follows from what has been said that in our opinion the district court should have instructed a verdict for the defendants, instead of for the plaintiff. It is therefore ordered that the judgment of that court be reversed, and that judgment be here rendered for plaintiffs in error.

Reversed and rendered.

## On Motions for Rehearing and Additional Conclusions of Fact.

Appellant's motion for a rehearing presenting nothing that leads us to the conclu-

sion that we erred in our original opinion, the same will be overruled. We make, however, the following additional findings of fact:

"At a meeting of the board of directors of the Washington Life Insurance Company held at the home office of the company in the city of New York on the 26th day of June, 1907, it was resolved as follows:

"First. That at the end of the thirtieth day of June, 1907, this company wholly cease to do any life insurance business within the state of Texas, and that, from and after said date, no life insurance business of any kind shall be done by this company within the state of Texas till the further order of the board.

"Second. That any and all permits and licenses to do business within the state of Texas heretofore granted by said state to this company, or to any and all representatives or agents of this company, be and the same hereby are surrendered to said state, such surrender to take effect at the end of the thirtieth day of June, 1907.

"Third. That the authority of all officers, agents and persons, including I. Reinhardt & Son, of Dallas, to represent this company within the state of Texas in any manner whatsoever, including the matter of acknowledging the service of legal process, and including also the soliciting of insurance, the collection of premiums, the delivery of policies and receipts, and the doing of any sort of life insurance business within said state, be, and the same hereby is, revoked, such revocation to take effect at the end of the thirtieth day of June, 1907."

Motion for rehearing is overruled.